**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION**

| | |
|---|---|
| HARVEY O.J. SIMPSON, SR.; JAKIMA SIMPSON; and HARVEY O.J. SIMPSON, JR., | |
| Plaintiffs, | CIVIL ACTION NO.: 5:13-cv-32 |
| v. | |
| COFFEE COUNTY SCHOOL DISTRICT, a Political Subdivision of the State of Georgia; and MICHAEL VICKERS, Individually and as School Resource Officer at Coffee County High School, | |
| Defendants. | |

## ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiffs filed this 42 U.S.C. § 1983 action based upon alleged deprivations of their constitutional rights by Coffee County High School and a school resource officer, Michael Vickers ("Defendant"). (Docs. 1, 27.)[1] On June 8, 2015, Defendant Vickers filed a Motion for Summary Judgment. (Doc. 58.) The Clerk of Court mailed a Notice to Plaintiffs advising them

---

[1] In their initial Complaint, Plaintiffs also named Coffee County; Coffee County Board of Education; Coffee County Sheriff's Department; Jerry Pope, former sheriff of Coffee County; Billy Cliett, Chairman of the Coffee County Board of Education; and Michael Vickers, Scott Harper, Bryan Miller, and Levi Harrell, deputies of the Coffee County Sheriff's Department serving as school resource officers. (Doc. 1.) On June 20, 2013, Plaintiffs filed a Consent Motion to Dismiss Coffee County Board of Education and Billy Cliett and filed an Amended Complaint adding Coffee County School District and Steve Wilmoth, former superintendent of Coffee County School District. (Docs. 10, 11.) Plaintiffs then filed a Consent Motion to substitute Defendant Steve Wilmoth with David Moseley on June 27, 2013, (doc. 20), which the Court granted on July 17, 2013, (doc. 27). The Court granted Defendant David Moseley's Motion to Dismiss and Defendants Coffee County, Coffee County Sheriff's Department, Pope, Harper, Miller, and Harrell's Motions to Dismiss on October 10, 2013, and November 25, 2013, respectively. (Docs. 39, 40). Accordingly, Coffee County School District and Michael Vickers are the only remaining Defendants in this action. Because the current Motion for Summary Judgment was only filed by Defendant Vickers, the Court refers to him as "Defendant" in this Report.

that Defendant Vickers filed a Motion for Summary Judgment and that a response must be filed by November 9, 2014. (Doc. 59.) That Notice further advised Plaintiffs that:

> 1. If you do not timely respond to this motion . . . , the consequence may be that the Court will deem the motion unopposed, and the Court may enter judgment against you.
>
> 2. If your opponent's Statement of Material Facts sets forth facts supported by evidence, the Court may assume that you admit all such facts unless you oppose those facts with your own Statement of Material Facts which also sets forth facts supported by evidence.
>
> 3. If a summary judgment motion is properly supported, you may not rest on the allegations in your [Complaint] alone.

(Id.) On October 20, 2014, the Court stayed all deadlines, including the response deadlines for Defendant's Motion for Summary Judgment, for 120 days. (Doc. 61.) On July 21, 2015, the Court directed the parties to file or amend their Motions for Summary Judgment within sixty days. (Doc. 69). On October 8, 2015, the Court again stayed the case for thirty (30) days to allow Plaintiffs time to secure replacement counsel. (Doc. 72). The Court warned Plaintiffs that if they failed to secure replacement counsel, they would be responsible for the progress of the case, including compliance with all deadlines. (Id.)

Plaintiff filed a notice of appearance of replacement counsel on November 23, 2015, (doc. 73), but failed to file a Response to Defendant's Motion for Summary Judgment. Accordingly, Defendant's Motion for Summary Judgment stands unopposed. However, "the district court cannot base the entry of summary judgment on the mere fact that the motion [is] unopposed but, rather, must consider the merits of the motion." United States v. One Piece of Real Property Located at 5800 SW 74th Ave., Miami, Fla., 363 F.3d 1099, 1101 (11th Cir. 2004) (citation omitted). Specifically, the court "must still review the movant's citations to the record to determine if there is, indeed, no genuine issue of material fact." Mann v. Taser Int'l, Inc., 588

F.3d 1291, 1303 (11th Cir. 2009) (citation omitted). Based on the reasons which follow, I **RECOMMEND** the Court **GRANT** Defendant's unopposed Motion.

## BACKGROUND[2]

On April 12, 2011, while serving in his capacity as a school resource officer, Defendant observed Plaintiff Harvey O.J. Simpson, Jr. ("the son") touch a white female ("the female") on her breast with a water bottle ("the incident"). (Doc. 58-1, p. 1.) Greg Tanner, principal of Coffee County High School, observed the incident through the school's video surveillance system, concluded that the son's contact with the female was sexual in nature, and directed Defendant Vickers to investigate the incident. (Id. at p. 2.)

The following day, Plaintiffs met with school officials to discuss the incident and view the video footage.[3] (Id. at p. 3.) However, Defendant could not find the video when Plaintiffs requested to view it. (Id.) When Plaintiffs became agitated that Defendant had not produced the video footage more quickly, Defendant asked Plaintiffs to wait outside his office while he continued searching for the video. (Id.) Plaintiffs refused to leave the office and continued to demand to see the video. (Id.) Defendant continued to ask Plaintiffs to leave and asked them, at least twice, "if there [was] anything he could say or do that would cause [them] to comply with his lawful commands to leave his office." (Id. at p. 4.) Plaintiffs allege that Defendant then

---

[2] In accordance with Local Rule 56.1, Defendant submitted a Statement of Undisputed Material Facts with his Motion for Summary Judgment. See Dkt. No. 58-1. Local Rule 56.1 requires that a party respond to a moving party's statement of undisputed facts, and if the party does not respond, those facts will be deemed admitted. See L.R. 56.1. Plaintiffs never filed a response to either Defendant's Motion for Summary Judgment or his Statement of Undisputed Material Facts. Therefore, this Court will consider all of the facts contained in Defendant's Statement of Undisputed Material Facts to be undisputed.

[3] Plaintiffs allege that Defendant allowed the female—but not the son—to view the video. (Doc. 31, p. 5.) Plaintiffs also allege that the son was asked to sign a suspension form before he had an opportunity to view the video. (Id.) After expressing their concerns to the assistant principal, he directed Defendant to show Plaintiffs the video. (Id.)

3

pointed his taser at Plaintiff Harvey O.J. Simpson, Sr.'s ("the father") head and chest and threatened to handcuff Plaintiffs and place them in jail.[4] (Doc. 31, p. 5.)

As Plaintiffs left the office, Jakima Simpson ("the mother") continued to argue with Defendant Vickers and attempted to push the door back towards Defendant to prevent it from closing. (Doc. 58-1, p. 4.) Plaintiffs allege that the mother stumbled forward when Defendant closed the door. (Doc. 31, p. 5.) Plaintiffs then stood in the hallway where the conversation with Defendant continued a few moments later. (Doc. 58-1, p. 5.) When Plaintiffs began to walk away, Defendant walked in front of them and the conversation continued for approximately ten seconds. (Id.) Plaintiffs then walked around Defendant and exited the building. (Id.) After they exited the school, Plaintiffs encountered another school resource officer who located the video and allowed them to view it in the office. (Id.)

Following the incident, the son was suspended from school for three days. (Doc. 31, p. 7.) The father and the mother allege that they then enrolled the son in a private school due to their fear of retaliation from Defendant. (Id.) Plaintiffs also allege that the mother has received medical treatment for pain in her neck and upper back as a result of her contact with the office door. (Id. at p. 6.) Finally, Plaintiffs claim they have endured public scorn and suffered mental anguish as a result of Defendant's actions. (Id. at p. 8.)

---

[4] Plaintiffs' Second Amended Complaint alleges that Defendant pointed his taser at the son. (Doc. 31, p. 5.) However, in his deposition, the father claims that Defendant pointed the taser at him, instead of the son. (Doc. 57-2, p. 87.)

4

**DISCUSSION**

In their Amended Complaint, Plaintiffs appear to contend that Defendant's actions violated their rights arising under the Fourteenth Amendment as well as state law.[5] (Id. at pp. 2, 3.) First, the son claims that Defendant discriminated against him on the basis of race. Plaintiffs are black, and they contend that the son's race motivated Defendant to launch an investigation of his contact with the white female and to construe that contact as sexual in nature. (Id. at p. 4.) While Plaintiffs' Amended Complaint is not clear, they appear to allege that this investigation and the son's resulting three-day suspension violated his equal protection rights under the Fourteenth Amendment. Plaintiffs further appear to claim that Defendant violated their procedural due process rights by failing to produce the video footage of the incident during the initial meeting.[6] (Id. at pp. 6–7.) Next, the mother asserts a claim of excessive force in violation of her substantive due process rights under the Fourteenth Amendment arising from her contact with the office door. (Id. at p. 5.) Plaintiffs also assert a state law claim of false imprisonment as a result of their encounter with Defendant in the school hallway following their confrontation in the office. (Id. at p. 6.) Finally, in connection with Defendant's decision to point a taser at him, the father asserts a state law claim of assault. (Id. at p. 5.)

In his Motion, Defendant argues that Plaintiffs can sustain neither their Section 1983 claims nor their state claims against him. (Doc. 58-2.) Specifically, Defendant contends that

---

[5] Plaintiffs' Second Amended Complaint does not contain specific counts for relief. Instead, the Second Amended Complaint references "Civil Rights Act 7 Title 42 of the United States Code, Section 1983, and Title 28 of the United States Code, Section 1343 [sic]." (Doc. 31, p. 3.) To the extent Plaintiffs attempt to assert a Title VII claim, their claim fails as Plaintiffs do not allege any claims of employment discrimination. Furthermore, 28 U.S.C. § 1343 is a jurisdictional statute and does not create a cause of action. Accordingly, the Court will construe Plaintiffs' Complaint as alleging violations of their constitutional rights under 42 U.S.C. 1983.

[6] Plaintiffs similarly claim that they were coerced into agreeing to the son's suspension. (Doc. 31, p. 7.) However, because Defendant did not suspend the son from school, Plaintiffs may not maintain any claims against this Defendant on that basis.

5

Plaintiffs have failed to show that his actions violated their constitutional rights. (Id. at p. 9.) Defendant further argues that he is entitled to qualified immunity regarding Plaintiffs' state law claims of false imprisonment and assault. (Id. at p. 16.) In moving for summary judgment, Defendant relies on his Statement of Uncontested Material Facts, as well as his own affidavit and depositions of Plaintiffs.

As set forth below, I agree that Plaintiffs fail to establish a genuine dispute as to their claims, and, therefore, the Court should grant Defendant's Motion.

## I. Standard of Review

Summary judgment "shall" be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. However, there must exist a conflict in substantial evidence to pose a jury question." Hall v. Sunjoy Indus. Grp., Inc., 764 F. Supp. 2d 1297, 1301 (M.D. Fla. 2011) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), and Verbraeken v. Westinghouse Elec. Corp., 881 F.2d 1041, 1045 (11th Cir. 1989)).

The moving party bears the burden of establishing that there is no genuine dispute as to any material fact and that he is entitled to judgment as a matter of law. See Williamson Oil Co., Inc. v. Philip Morris USA, 346 F.3d 1287, 1298 (11th Cir. 2003). Specifically, the moving party must identify the portions of the record which establish that there are no "genuine dispute[s] as to any material fact and the movant is entitled to judgment as a matter of law." Moton v. Cowart, 631 F.3d 1337, 1341 (11th Cir. 2011). When the nonmoving party would have the burden of proof at trial, the moving party may discharge his burden by showing that the record lacks

evidence to support the nonmoving party's case or that the nonmoving party would be unable to prove his case at trial. See id. (citing Celotex v. Catrett, 477 U.S. 317, 322–23 (1986)). In determining whether a summary judgment motion should be granted, a court must view the record and all reasonable inferences that can be drawn from the record in a light most favorable to the nonmoving party. Peek-A-Boo Lounge of Bradenton, Inc. v. Manatee Cty., 630 F.3d 1346, 1353 (11th Cir. 2011).

## II. Race Discrimination

The parties do not dispute the underlying facts. The son made brief contact with the female's breast using a water bottle. (Doc. 31, p. 4.) Defendant witnessed the encounter via the school's surveillance system and, at the direction of the assistant principal, proceeded to investigate the incident, which resulted in the son's three-day suspension from school. (Id.) Defendant does not dispute that, during a meeting with Plaintiffs following the incident, he told them that he had seen the son "behaving inappropriately" with a Hispanic female student on a previous occasion. (Id. at p. 7.) Plaintiffs contend that, based upon this comment and the son's tendency to "date[] outside of his race," Defendant discriminated against the son based upon his race. (Id.) As best the Court can glean from Plaintiffs' Second Amended Complaint, the son appears to allege that the investigation and resulting suspension violated his right to Equal Protection under the Fourteenth Amendment.

The Fourteenth Amendment's Equal Protection Clause provides that "[n]o State shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The Clause "directs that 'all persons similarly circumstanced shall be treated alike.'" Plyler v. Doe, 457 U.S. 202, 216 (1982) (internal quotation omitted). To establish an equal protection violation, a plaintiff must show that the state treated him disparately from other

7

similarly situated persons and that the disparate treatment burdens a fundamental right or is based on membership in a suspect class. DeYoung v. Owens, 646 F.3d 1319, 1327 (11th Cir. 2011); see also Jones v. Ray, 279 F.3d 944, 946–47 (11th Cir. 2001). Furthermore, plaintiff must demonstrate that the challenged action was motivated by an intent to discriminate. Washington v. Davis, 426 U.S. 229, 239–48 (1976). "Discriminatory intent may be established by evidence of such factors as substantial disparate impact, a history of discriminatory official actions, procedural and substantive departures from the norms generally followed by the decision-maker, and discriminatory statements in the legislative or administrative history of the decision." Elston v. Talladega Cty. Bd. of Educ., 997 F.2d 1394, 1406 (11th Cir. 1993).

Plaintiffs, who claim discrimination on the basis of race, are members of a suspect class. See Adarand Constructors Inc., v. Pena, 515 U.S. 200 (1995) (finding that "racial classifications are constitutionally suspect") (internal quotation omitted). However, Plaintiffs have not shown that Defendant possessed any intent to discriminate against them or the son on the basis of race. The only evidence offered by Plaintiffs to establish Defendant's discriminatory intent is that the son "dates outside of his race" and that Defendant commented that he had seen the son behaving inappropriately with a Hispanic student on a prior occasion. This single remark by Defendant falls short of proving that he intended to discriminate against the son on the basis of race. See Benjamin v. Am. Airlines, Inc., No. CV 213-150, 2015 WL 8968297, at *7 (S.D. Ga. Dec. 15, 2015) (finding that "[a] single insult, without more in the form of attendant circumstances or otherwise" did not establish discriminatory intent). Moreover, Plaintiffs have not established that Defendant treated them differently than individuals of a different race or that Defendant treated the son differently than individuals who do not date "outside of their race." Additionally, Plaintiffs have not pointed to any other factors such as a substantial disparate impact, a history of

discriminatory official actions, or procedural and substantive departures that can support an equal protection claim. Accordingly, Plaintiffs fail to present evidence creating a genuine dispute as to Defendant's discriminatory intent. Therefore, Defendant is entitled to judgment as a matter of law regarding the son's Fourteenth Amendment equal protection claim.

**III.  Procedural Due Process**

Defendant does not dispute that he failed to produce the video footage at Plaintiffs' request, but asserts that this failure was due to circumstances beyond his control. (Doc. 58-1, p. 3.) First, Defendant claims the video was difficult to locate because Coffee County High School has more than 100 security cameras, which required him to search through a large amount of footage to locate the video. (Id.) Second, Defendant claims he had no notice that Plaintiffs intended to view the video the morning of April 13, 2011, and was, therefore, unable to locate the video as quickly as Plaintiffs preferred. (Id.) Plaintiffs, on the other hand, contend that Defendant failed to produce the video footage during their meeting because he intended to prevent them from viewing the footage. (Doc. 31, p. 5.) Plaintiffs point to Defendant's statement that "he did not have to show them anything" and his request that they leave the office. (Id.) However, neither Plaintiffs nor Defendant dispute that Plaintiffs viewed the video footage shortly thereafter, when another school official located the video. Accordingly, the only dispute is whether Defendant intended to prevent Plaintiffs from viewing the video and whether his action violated the son's right to due process.

In order to assert a procedural due process claim, the plaintiff must prove three elements: "(1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process." Catron v. City of St. Petersburg, 658 F.3d 1260, 1266 (11th Cir. 2011). "Where a student is suspended for ten days or less, the constitutional

9

procedural requirements are minimal, merely requiring that the student was given (1) notice of the charges against him, (2) an explanation of the evidence supporting the charge, and (3) an opportunity for him to present his version of the basis for the action. Barnes v. Zaccari, 669 F.3d 1295, 1305 (11th Cir. 2012) (citing Goss v. Lopez, 419 U.S. 565, 577 (1975)). Furthermore, "once school administrators tell a student what they heard or saw, ask why they heard or saw it, and allow a brief response, a student has received all the process that the Fourteenth Amendment demands." C.B. v. Driscoll, 82 F.3d 383, 386 (11th Cir. 1996). See also Roy ex rel. Roy v. Fulton Cty. School Dist., 509 F. Supp. 2d 1316, 1323 (N.D. Ga. 2007), *affirmed in* Roy v. Fulton Cty. School Dist., 288 F. App'x 686 (11th Cir. 2008).

The only arguably disputed fact—whether Defendant intended to prevent Plaintiffs from viewing the video—is immaterial. Assuming, *arguendo*, that Defendant intended to prevent Plaintiffs from viewing the video footage, the son received all the process he was due under the Fourteenth Amendment regarding his suspension from school. He was notified of the charges against him and an explanation of the evidence supporting those charges. He was also given a chance to explain those charges, as evidenced by his initial refusal to sign the suspension form and his parents' follow up meeting with school officials. While Plaintiffs claim they were coerced into signing the son's suspension form under duress, they present no evidence supporting that claim, nor do they present any evidence that this Defendant coerced them in any way. Moreover, this Defendant did not have any decision making authority regarding the suspension. Rather, his role was to merely investigate any alleged wrongdoing and report any findings to school administrators for further handling, including any imposition of punishment. (Doc. 58-3, pp. 3–4.) Accordingly, no genuine dispute of material fact exists and Defendant is entitled to judgment as a matter of law on Plaintiffs' procedural due process claim.

**IV.     Excessive Force**

Next, the mother claims that Defendant violated her substantive due process right against excessive force by "slamming" the door as she exited the office, causing the door to hit her back. The parties do not dispute that Defendant repeatedly asked Plaintiffs to wait outside the office and inquired whether he could say anything to make them "comply with his lawful command" but Plaintiffs remained in the office. (Doc. 58-1, p. 4.)  Defendant also claims, and the mother does not dispute, that Defendant could not see the mother outside the door because his view of the hallway was obstructed by a poster placed on the window of the door. (Id.)  Defendant avers that he is not even aware if the door hit the mother.  (Doc. 58-3, p. 3.)

When "addressing an excessive force claim brought under § 1983, analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force." Graham v. Connor, 490 U.S. 386, 394 (1989).  The Supreme Court has held that "all claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." Id. at 395.  "Because the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." Id.  Accordingly, the Fourth Amendment does not apply to all claims that an officer has used excessive force.  Instead, it applies only to excessive force claims that involve an arrest, investigatory stop, or other seizure. See Wilson v. Northcutt, 987 F.2d 719, 722 (11th Cir. 1993).  Because there is no explicit textual source of constitutional protection against the use of excessive force when the Fourth Amendment is not implicated, such a claim

11

must be analyzed as a substantive due process claim under the Fourteenth Amendment. See id. (holding that "a non-seizure Fourteenth Amendment substantive due process claim of excessive force survives Graham").

The initial critical question, then, is whether the mother was "seized" within the meaning of the Fourth Amendment when Defendant pushed the door and caused it to make contact with her back. To determine whether there was a Fourth Amendment seizure, the Court turns to the Supreme Court's decision in California v. Hodari D., 499 U.S. 621 (1991). "Under Hodari D., a person is seized within the meaning of the Fourth Amendment only when he is physically touched by a police officer or when he submits to a show of authority." Carr v. Tatangelo, 156 F. Supp. 2d 1369, 1377 (M.D. Ga. 2001) *aff'd*, 338 F.3d 1259 (11th Cir. 2003), *as amended* (Sept. 29, 2003). Here, though Defendant arguably "touched" the mother by causing the door to make contact with her body, it is undisputed that he did not do so for the purpose of "seizing" her. To the contrary, Defendant had repeatedly requested that she *leave* the office.

Therefore, because the force was not applied to the mother in connection with a "seizure" under the Fourth Amendment, the Court must now determine whether Defendant violated her substantive due process right against excessive force under the Fourteenth Amendment. The starting point for discussing a substantive due process claim is Rochin v. California, 342 U.S. 165 (1952), in which the Supreme Court broadly outlined the contours of a substantive due process claim. In that case, the Supreme Court held that substantive due process is violated only if the government official has done something that "shocks the conscience" or "offend[s] even hardened sensibilities." Id. at 172. On the other hand, conduct that does nothing more than "offend some fastidious squeamishness or private sentimentalism about combatting crime too energetically" is not sufficiently egregious to reach constitutional dimensions. Id. at 172–74; see

also Gilmere v. City of Atlanta, 774 F.2d 1495, 1500 (11th Cir. 1985) (en banc) (noting that "the violations which give rise to a substantive due process claim are necessarily more egregious than those which give rise to simple tort actions"); T.W. ex rel. Wilson v. School Bd. of Seminole Cty., 610 F.3d 588, 598 (11th. Cir. 2010) (noting that both the Eleventh Circuit and the Supreme Court have "said repeatedly that the Fourteenth Amendment is not a 'font of tort law' that can be used, through section 1983, to convert state tort claims into federal causes of action." (citing Neal ex rel. Neal v. Fulton Cty. Bd. of Educ., 229 F.3d 1069, 1074 (11th Cir. 2000), and Cty. of Sacramento v. Lewis, 523 U.S. 833, 848 (1998))).

Because of the inherent vagueness in the "shocks the conscience" standard, the Eleventh Circuit "has adopted the more concrete standards for identifying a substantive due process violation that were laid out in Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973)." Wilson, 987 F.2d at 722; see also Gilmere, 774 F.2d at 1500–01. Accordingly, when determining whether the force used by a police officer constitutes a substantive due process violation, the following factors must be considered: "the need for force, the relationship between the need for force and the amount of force used, the extent of injury inflicted, and whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." Wilson, 987 F.2d at 722 (internal quotation omitted). Applying these factors to this case, the Court finds that Defendant's conduct did not violate the mother's substantive due process rights even when viewed in a light most favorable to Plaintiffs.

First, Plaintiffs do not dispute that they repeatedly declined Defendant's request that they step outside the office while he searched for the video or that the confrontation between the parties had become heated. (Doc. 58-1, p. 4.) Therefore, Defendant appears to have been justified in using some amount of force to remove them from the office. See Alday v. Groover,

No. 212-CV-108, 2014 WL 1320093, at *6 (S.D. Ga. Mar. 31, 2014) (finding that officer's application of taser to pretrial detainee's neck after she refused to exit the police vehicle within thirty-seven seconds of being directed to do so was reasonable).

Second, the mother alleges that Defendant "violently slammed" the door with enough force to cause her to stumble, thereby exceeding the amount of force necessary to remove her from the office. (Doc. 31, p. 5.) Defendant conversely contends that he merely "closed" the door. (Doc. 58-1, p. 4.) However, even when viewed in a light most favorable to Plaintiffs, the amount of force that Defendant applied would not "shock the conscience." See T.W. ex rel. Wilson, 610 F.3d at 599 (finding that "it is inconceivable that tripping a student and causing the student to stumble, without more, violates the Constitution" under any substantive due process analysis). Again, Plaintiffs do not dispute that they refused to leave the room after being asked multiple times or that the parties' conversation had grown tense. Further, the mother admits that she attempted to interfere with Defendant's effort to close the door. (Doc. 57-3, p. 29.) Plaintiffs have not proffered any evidence that the amount of force Defendant applied in closing the door exceeded the need for force occasioned by Plaintiffs' actions.

Third, while the mother claims that she has received extensive treatment for back injuries as a result of her contact with the door, Plaintiffs have submitted no evidence documenting any medical care. Finally, Plaintiffs have not presented facts sufficient to show that Defendant slammed the door maliciously or sadistically for the purpose of causing harm. Again, Defendant has proffered legitimate reasons for his decision to close the door, a decision which Plaintiff resisted. Moreover, according to Defendant's uncontroverted affidavit, he could not even see the mother at the time that he closed the door, and he is not aware if the door touched her. (Doc. 58-

14

3, p. 3.) Thus, there is no competent evidence that Defendant closed the door maliciously or sadistically.

Put succinctly, Plaintiffs have not produced any evidence that Defendant closed the door with the intent to harm the mother, as opposed to his intent to diffuse a tense situation by keeping Plaintiffs outside of his office. Accordingly, even when viewed in a light most favorable to Plaintiffs, Defendant's behavior does not "shock the conscience", and he is, therefore, entitled to judgment as a matter of law regarding the Plaintiffs' substantive due process claim of excessive force.

## V.     False Imprisonment and Assault

In addition to their federal causes of action, Plaintiffs also allege claims arising under state law. Plaintiffs assert state law claims of false imprisonment against Defendant Vickers in connection with the parties' confrontation in the school hallway. In addition, the father asserts a state-law claim of assault because Defendant pointed a taser at him. Because Plaintiffs' Section 1983 claims against Coffee County School District remain, claims over which the court has jurisdiction remain. The Court should nonetheless decline to exercise jurisdiction over Plaintiffs' state claims against Defendant Vickers based on the remaining federal claims against Coffee County School District. See Harrington v. City of Phenix City, No. 3:10–CV–1048–WKW, 2012 WL 5287057, at *9 (M.D. Ala. Oct. 24, 2012) (finding, on motion for summary judgment filed by two out of four remaining defendants, that declining to exercise jurisdiction over Plaintiff's state claims was proper because "though Plaintiff's federal claims against [the other defendants] remain, the future of those claims in federal court is exceedingly uncertain" and that "[d]eclining to exercise supplemental jurisdiction over Plaintiff's state law claims will not make this litigation more piecemeal than it already is").

"[I]n any civil action of which the district courts have original jurisdiction, the district court shall have supplemental jurisdiction over all other claims that are so related to claims" over which the court has original jurisdiction "that they form part of the same case or controversy." 28 U.S.C. § 1367(a). Notwithstanding supplemental jurisdiction, a district court has the discretion to decline supplemental jurisdiction if

> "(1) the claim raises a novel or complex issue of State law; (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction; (3) the district court has dismissed all claims over which it has original jurisdiction; or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c).

This case presents exceptional circumstances compelling the court to decline supplemental jurisdiction over Plaintiffs' state law claims against Defendant Vickers. Based upon a review of Plaintiffs' Second Amended Complaint, it appears that Plaintiffs may be unable to assert any claims against Coffee County Board of Education, should the Court grant Defendant Vickers' unopposed motion for summary judgment. Further, this litigation has grown increasingly fractured as evidenced by the multiple stays in this case,—originally filed over three years ago—multiple amendments to Plaintiffs' Complaint, and staggered motions to dismiss and motions for summary judgment. Therefore, declining to exercise jurisdiction over Plaintiffs' state law claims will not make this litigation more piecemeal than it already is. Additionally, through Plaintiffs' failure to respond to Defendant Vickers' Motion for Summary Judgment, they have indicated an unwillingness to prosecute any claims against Defendant Vickers. Accordingly, the father's state-law claim of assault and Plaintiffs' false imprisonment claims should be dismissed without prejudice.

**CONCLUSION**

Based on the foregoing, it is my **RECOMMENDATION** that the Court **GRANT** Defendant's unopposed Motion for Summary Judgment. (Doc. 58.)

Any party seeking to object to this Report and Recommendation is **ORDERED** to file specific written objections within fourteen (14) days of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the Complaint must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action. The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge. The Clerk of Court is **DIRECTED**

to serve a copy of this Report and Recommendation upon the parties.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 13th day of May, 2016.

_____
R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA