# In the United States District Court
# For the Southern District Of Georgia
# Waycross Division

| | | |
|---|---|---|
| HARVEY O.J. SIMPSON, SR.; JAKIMA SIMPSON; and HARVEY O.J. SIMPSON, JR., | * * * * | |
| Plaintiffs, | * * | CIVIL ACTION NO.: 5:13-cv-32 |
| v. | * * * | |
| COFFEE COUNTY SCHOOL DISTRICT, a Political Subdivision of the State of Georgia; and MICHAEL VICKERS, Individually and as School Resource Officer at Coffee County High School, | * * * * * * * | |
| Defendants. | * * | |

## ORDER

Presently before the Court is the Magistrate Judge's Report and Recommendation dated May 13, 2016. Dkt. no. 74. The Magistrate Judge recommended that the Court grant summary judgment to Defendant Michael Vickers ("Vickers") on all of Plaintiffs' federal law claims and dismiss Plaintiffs' state law claims against Vickers. Id. Plaintiff has objected to the Report and Recommendation. Dkt. no. 78. Also before the Court are Coffee County School District's ("CCSD") Objection, dkt. no. 75, and Defendant Michael Vickers' Objection in part, dkt. no. 76. After an independent and de novo review of the entire

record, the Court **OVERRULES IN PART AND SUSTAINS IN PART**
Plaintiff's Objections, **OVERRULES** CCSD's Objections, but
**SUSTAINS** Defendant Vickers' Objection.

The Magistrate Judge's Report and Recommendation, as
amended herein, is **ADOPTED IN PART AND REJECTED IN PART** as the
opinion of the Court. For the reasons discussed below, the
Court **GRANTS** Defendant Vickers' Motion for Summary Judgment,
dkt. no 58, and **DISMISSES** Plaintiff's claims as to Defendant
Vickers **WITH PREJUDICE**.

## BACKGROUND

On April 12, 2011, while serving in his capacity as a
school resource officer, Defendant Vickers observed Plaintiff
Harvey O.J. Simpson, Jr. ("the son") touch a white female ("the
female") on her breast with a water bottle ("the incident").
Dkt. no. 58-1, p. 1. Greg Tanner, principal of Coffee County
High School, observed the incident through the school's video
surveillance system, concluded that the son's contact with the
female was sexual in nature, and directed Defendant Vickers to
investigate the incident. Id. at p. 2.

The following day, Plaintiffs met with school officials to
discuss the incident and to view the video footage. Id. at p.
3. However, Defendant Vickers could not find the video upon
Plaintiffs' request to view it. Id. Though Defendant Vickers
asked Plaintiffs to wait outside his office while he searched

for the video, Plaintiffs refused to leave the office.  Id.
Eventually, according to Plaintiffs, Defendant Vickers then
pointed his taser at Plaintiff Harvey O.J. Simpson, Sr.'s ("the
father") head and chest and threatened to handcuff Plaintiffs
and place them in jail.  Dkt. no. 31, p. 5.

As Plaintiffs left the office, Jakima Simpson ("the
mother") continued to argue with Defendant Vickers and attempted
to push the door back towards Defendant to prevent it from
closing.  Dkt. no. 58-1, p. 4.  Plaintiffs allege that Vickers
closed the door on the mother, and she stumbled forward when
Defendant Vickers closed the door.  Dkt. no. 31, p. 5.

Plaintiffs then stood in the hallway where they spoke with
Defendant Vickers shortly thereafter.  Dkt. no. 58-1, p. 5.
When Plaintiffs began to walk away, Defendant Vickers stepped in
front of them, and the conversation continued for approximately
ten seconds.  Id.  Plaintiffs then walked around Defendant
Vickers and exited the building.  Id.

Plaintiff alleges that Defendants violated their rights
arising under the Fourteenth Amendment and state law.
Specifically, the son claims that Defendant Vickers
discriminated against him on the basis of race when he launched
an investigation concerning the son's contact with the white
female.  Dkt. no. 31, p. 4.  Plaintiffs also appear to allege
that this investigation and the son's resulting three-day

suspension violated his equal protection rights under the Fourteenth Amendment. Plaintiffs further claim that Defendant Vickers violated their procedural due process rights by failing to produce video footage of the incident when requested. Id. at pp. 6-7. The mother asserts a claim of excessive force in violation of her substantive due process rights under the Fourteenth Amendment concerning her contact with the office door. Id. at p. 5. Plaintiffs also assert a state law claim of false imprisonment as a result of their encounter with Defendant Vickers in the school hallway following their confrontation in the office. Id. at p. 6. Finally, in connection with Defendant Vickers' decision to point a taser at him, the father asserts a state law claim of assault. Id. at p. 5.

Defendant Vickers filed a Motion for Summary Judgment on October 17, 2014, to which Plaintiffs failed to file a response. Dkt. no. 58. The Magistrate Judge recommended that the Court decline to exercise jurisdiction over Plaintiffs' state law claims, grant Defendant Vickers' unopposed Motion for Summary Judgment as to the federal claims, and dismiss all of Plaintiffs' claims against Defendant Vickers. Dkt. no. 74, pp. 15, 17. Plaintiffs filed Objections to the Magistrate Judge's Report and Recommendation, contending, *inter alia*, that the Magistrate Judge failed to address their state law claims of negligence and battery. Id. at p. 4. Defendant CCSD also filed

an "Objection" to the Magistrate Judge's Report and
Recommendation, in which it seeks an extension of thirty days to
file a Motion for Summary Judgment. Dkt. no. 75, p. 4.
Finally, Defendant Vickers filed an Objection in part,
contending that the Court should exercise jurisdiction over
Plaintiffs' state law claims and grant his Motion for Summary
Judgment as to Plaintiffs' state law claims. Dkt. no. 76, p. 3.

**DISCUSSION**

**I.  Plaintiffs' Objections**

Plaintiffs object to the Magistrate Judge's recommendation
that the Court dismiss all of Plaintiffs' federal claims.
However, Plaintiffs failed to raise these arguments in response
to the Motion for Summary Judgment.  This Court is under no
obligation to consider novel evidence and legal arguments raised
for the first time in an objection to a report and
recommendation.  <u>Williams v. McNeil</u>, 557 F.3d 1287, 1292 (11th
Cir.2009) ("[A] district court has the discretion to decline to
consider a party's argument when the argument is not first
presented to the magistrate judge.").  Plaintiffs' objections
are due to be dismissed on this basis alone.

Additionally, as the Magistrate Judge recounted, the Court
notified Plaintiffs of their obligation to respond to the Motion
for Summary Judgment and provided them numerous opportunities to
do so.  Dkt. No. pp. 1-2.  Plaintiffs have still not

contradicted Defendant Vickers' statement of undisputed material facts. See Local Rule 56.1 (a party opposing summary judgment must directly respond to a moving party's statement of undisputed facts, and if the opposing party does not respond, the facts stated by the moving party will be deemed admitted). Furthermore, the Magistrate Judge already addressed nearly all of the issues raised by Plaintiffs' Objections through the Report and Recommendation. The Court concurs with that analysis.

Accordingly, the Court **OVERRULES** Plaintiffs' Objections as to his federal claims. The Court **ADOPTS** the Magistrate Judge's recommendation that the Court grant Defendant Vickers' summary judgment on Plaintiffs' federal claims.

However, the Court will specifically assess Plaintiffs' Objection that the Magistrate Judge failed to address their state law claims of negligence and battery. Plaintiffs state that they "believe [former counsel] plead[ed] claims of negligence and battery." Dkt. no. 78, p. 4.

Federal Rule of Civil Procedure 8(a)(2) states that a Complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The Supreme Court has clarified that while the pleading standard of Rule 8 "does not require 'detailed factual allegations,'" it does demand "more than an un-adorned, the-defendant-unlawfully-

harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678
(2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544,
555 (2007)). Ultimately, the statement must "give the defendant
fair notice of what the . . . claim is and the grounds upon
which it rests." Erickson v. Pardus, 551 U.S. 89, 93 (2007).
Nevertheless, "each separate claim is required to be presented
in a separate numbered paragraph, with each paragraph 'limited
as far as practicable to a single set of circumstances.'"
Hickman v. Hickman, 563 F. App'x 742, 743-44 (11th Cir. 2014)
(quoting Fed. R. Civ. P. 10(b)); see also, Anderson v. Dist. Bd.
of Trs. of Cent. Fla. Cmty. Coll., 77 F.3d 364, 366 (11th Cir.
1996) (stating that multiple claims should be presented
separately in adherence to Federal Rule of Civil Procedure 10(b)
"and with such clarity and precision that the defendant will be
able to discern what the plaintiff is claiming and to frame a
responsive pleading").

Plaintiffs argue that the following language, contained in
Paragraph 36 of their Second Amended Complaint, satisfies the
standard set forth above: "Plaintiff Mrs. Simpson shows that she
has not recovered, and will never recover from the Injury
Intentionally and Negligently inflected upon her [sic]. . . ."
Dkt. no. 78, p. 4 (citing dkt. no. 36). This statement does not
set forth Plaintiffs' alleged state law claims of negligence and
battery separately or with any clarity and precision. First, it

is unclear whether Plaintiffs are asserting a claim of negligence, battery, or both through this statement as they allege that Defendant Vickers intentionally <u>and</u> negligently injured Plaintiff. Second, assuming Plaintiffs intended to assert both a claim of negligence and an intentional tort of battery through this sentence, they failed to set forth each claim in separate paragraphs. Finally, as this statement is couched between a string of imprecise allegations within Plaintiffs' Amended Complaint, this particular statement did not give Defendant Vickers fair notice that Plaintiffs intended to set forth two additional claims.[1]

Nonetheless, the Complaint is not completely bereft of any allegations that could have placed Defendant Vickers on notice of negligence and battery claims. Plaintiffs allege that as they attempted to leave Vickers' office, Vickers "slammed and continued to close the door on Mrs. Simpson, [the mother]." Dkt. no. 31, p. 5. Thus, in an abundance of caution, the Court will presume that Plaintiffs stated a claim for negligence and battery through their Amended Complaint. The Court will include those claims in its below discussion of Plaintiffs' state law

---

[1] Defendant Vickers' Motion for Summary Judgment evidences the uncertainty regarding which claims Plaintiff actually intended to assert. Defendant Vickers notes that "it is not clear whether the plaintiffs intend to assert a claim for assault, or any other claim, that is based on state law . . . . In the event the plaintiffs later claim that they are asserting other claims based on state law, Deputy Vickers reserves the right to address any such claims in a reply brief." Dkt. no. 58-2, p. 16 n.13.

claims. Thus, the Court **SUSTAINS** this portion of Plaintiffs' Objections.

## II. Defendant CCSD's Objection

Defendant CCSD has also filed an Objection. In that Objection, CCSD states that it "does not object to the Magistrate Judge's Report and Recommendation as it applies to co-Defendant Vickers' Summary Judgment motion; rather, CCSD's objection is lodged for the purpose of having the District Court Judge grant CCSD a period of thirty days . . . to file its Summary Judgment Motion on all claims lodged by Plaintiff." Dkt. No. 75, p. 4.

CCSD's Objection is not responsive to the Magistrate Judge's Report and Recommendation. The Magistrate Judge did not address whether or when CCSD would be allowed to file a Motion for Summary Judgment. Additionally, an Objection to the Magistrate Judge's Report and Recommendation is not the proper vehicle for CCSD to request an extension of time to file a motion for summary judgment. Rather, it should file a Motion advancing that request. Accordingly, the Court **OVERRULES** CCSD's Objection.

## III. Defendant Vickers' Objection and Analysis of Plaintiff's State Law Claims

After recommending that the Court dismiss Plaintiffs' federal claims on the merits, the Magistrate Judge recommended

that the Court decline to exercise jurisdiction over Plaintiffs' state law claims.  Defendant Vickers objects to only this portion of the Report and Recommendation.  Dkt. no. 76. Defendant Vickers requests that the Court retain jurisdiction over Plaintiffs' state law claims of false imprisonment and assault and that the Court grant him summary judgment on those claims.  After careful consideration and for the reasons set forth below, the Court finds it prudent to exercise jurisdiction over Plaintiffs' state claims.  Accordingly, the Court **SUSTAINS** Defendant Vickers' Objection, and **REJECTS IN PART** the Magistrate Judge's Report and Recommendation.  Moreover, as discussed below, the Court **GRANTS** Defendant Vickers' Motion for Summary Judgment as to Plaintiffs' state law claims and **DISMISSES** those claims against Vickers **with prejudice**.

### A. Whether to Exercise Supplemental Jurisdiction over Plaintiffs' State Law Claims

28 U.S.C. § 1367(a) provides a federal court with supplemental jurisdiction over claims that are so related to a plaintiff's federal claims that they form part of the same case or controversy.  "The Constitutional 'case or controversy' standard confers supplemental jurisdiction over all state law claims which arise out of a common nucleus of operative fact." Lucero v. Trosch, 121 F.3d 591, 597 (11th Cir. 1997) (citing United Mine Workers v. Gibbs, 383 U.S. 715, 724-25 (1966)).  A

District Court can decline to exercise supplemental jurisdiction over a pendent state claim under 28 U.S.C. § 1367(c) if:

> (1) the claim raises a novel or complex issue of state law;
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction;
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

"In determining whether [dismissal] is appropriate under any of these four categories the Court must make a case specific analysis and consider factors including judicial economy, convenience, fairness to litigants, and comity. Gibbs, 383 U.S. at 726.

In a proceeding before a district court upon a federal cause of action, the court has substantial discretion in determining whether to exercise supplemental jurisdiction over pendent state-law claims. 28 U.S.C. § 1367; Raney v. Allstate Ins. Co., 370 F.3d 1086, 1088-89 (11th Cir. 2004) (per curiam). This discretion survives even where all federal claims are dismissed. Raney, 370 F.3d at 1088-89; see also Palmer v. Hosp. Auth., 22 F.3d 1559, 1567-68 (11th Cir. 1994). Ordinarily, when all federal claims are eliminated before trial, the district court should decline to exercise jurisdiction over the remaining state-law claims. Carnegie-Mellon Univ. v. Cohill, 484 U.S.

343, 350 n.7, (1988). Nevertheless, the decision ultimately rests within the district court's discretion, to be guided by considerations of judicial economy, fairness, comity, and convenience. Id.; see also Casey v. City of Miami Beach, 805 F. Supp. 2d 1361, 1362 (S.D. Fla. 2011) (declining to remand where factors favored retention of jurisdiction though federal claims were dismissed).

As Defendant Vickers notes in his Objection, this Court frequently adjudicates state law claims of false imprisonment and assault, and neither of those claims raise novel or complex issues. Furthermore, neither of these claims substantially predominate over Plaintiffs' federal claims. Moreover, not all federal claims have been dismissed as Plaintiffs' federal claims against Defendant CCSD remain before the Court. Finally, as the parties have litigated this action in this Court for an extended period, the convenience and fairness to the litigants of addressing the claims in this forum outweigh any concerns of comity. Therefore, the Court exercises its discretion to maintain jurisdiction over Plaintiffs' state law claims of false imprisonment and assault against Defendant Vickers.

### B. Defendant Vickers' Motion for Summary Judgment as to the State Law Claims

Having retained jurisdiction over Plaintiffs' state law claims, the Court must now assess the merits of Defendant

Vickers' Motion for Summary Judgment on those claims.

Plaintiffs allege state law claims of assault against Defendant Vickers concerning his decision to point a taser at the father's head. Plaintiffs also allege claims of false imprisonment regarding Defendant Vickers' ten-second conversation with them in the school hallway. Additionally, as noted above, the Court will presume that Plaintiffs have alleged claims of negligence and battery for Defendant Vickers closing the door on Mrs. Simpson, the mother.

Defendant Vickers asserts that he is entitled to official immunity as to all of Plaintiffs' state law claims. Under Georgia law, the "doctrine of official immunity, also known as qualified immunity, offers public officers and employees limited protection from suit in their personal capacity." Cameron v. Lang, 549 S.E.2d 341, 344 (Ga. 2001). Official or qualified immunity shields a Georgia public employee from liability except when he performs ministerial acts negligently or performs ministerial or discretionary acts with malice or an intent to injure. Id.; Russell v. Barrett, 673 S.E.2d 623, 626 (Ga. Ct. App. 2009). "The rationale for this immunity is to preserve the public employee's independence of action without fear of lawsuits and to prevent a review of his or her judgment in hindsight." Cameron, 549 S.E.2d at 344.

"A ministerial act is commonly one that is simple, absolute, and definite, arising under conditions admitted or proved to exist, and requiring merely the execution of a specific duty." Russell, 673 S.E.2d at 626. "A discretionary act, however, calls for the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed." Id. at 626-27. Here, Defendant Vickers' interactions with Plaintiffs required him to exercise judgment. As he dealt with Plaintiffs in a heated and tense situation, he was required to make judgments as to how to respond to their requests and criticism. Specifically, his challenged actions—pulling out his taser and pointing it at plaintiffs, ushering Plaintiffs out of his office and closing the door to keep them out, and confronting Plaintiffs in the hallway—were discretionary acts. See Cameron, 549 S.E.2d at 345 (holding that law enforcement officer exercised discretion when engaging in high speed chase and noting that court had "previously held that a law enforcement officer exercises discretion in responding to an emergency call, entrusting a car to a jail inmate, executing a search warrant, and firing a gun at a suspect.").

Because Plaintiffs challenge Vickers' discretionary actions taken within the scope of his official authority, Plaintiffs

must demonstrate actual malice or actual intent to cause injury to pierce the shield of official immunity under Georgia law. Id. In the context of official immunity, "actual malice requires a deliberate intention to do wrong and denotes express malice or malice in fact." Adams v. Hazelwood, 520 S.E.2d 896, 898 (Ga. Ct. App. 1999). As explained by the Eleventh Circuit, "malice in this context means badness, a true desire to do something wrong." Peterson v. Baker, 504 F.3d 1331, 1339 (11th Cir. 2007). In addition, "actual intent to cause injury" means "an actual intent to cause harm to the plaintiff, not merely an intent to do the act purportedly resulting in the claimed injury." Id.

The Georgia Court of Appeals' opinion in Selvy v. Morrison, 665 S.E.2d 401 (Ga. Ct. App. 2008), is instructive in determining what constitutes malice in the context of Vickers' interaction with Plaintiffs. There, the plaintiff alleged that she was brutally treated when she was arrested for disorderly conduct. Selvy, 665 S.E.2d at 403. Specifically, she alleged that the officers used profanity towards her, made derogatory statements about her and her boyfriend, threatened to break down her door if she refused to open it, grabbed her arm, twisted her arm behind her back, and slammed her face into a wall. Id. Additionally, an officer kicked her legs out from under her, and in the process, kicked her ten-year-old son in the mouth. Id.

Nonetheless, the Georgia Court of Appeals found that the plaintiff failed to demonstrate that the officers acted with actual malice or intent to injure the plaintiff. Id. at 404–05. Thus, the court affirmed the trial court's grant of summary judgment to the officers on grounds of official immunity. Id. The court explained,

> In the context of official immunity, actual malice requires a deliberate intention to do wrong and denotes express malice or malice in fact. Actual malice does not include implied malice, or the reckless disregard for the rights and safety of others. A deliberate intention to do wrong such as to constitute the actual malice necessary to overcome official immunity must be in the intent to cause the harm suffered by the plaintiffs. Likewise, the phrase "actual intent to cause injury" has been defined in a tort context to mean an actual intent to cause harm to the plaintiff, not merely an intent to do the act purportedly resulting in the claimed injury. This definition of intent contains aspects of malice, perhaps a wicked or evil motive.

Id. (internal quotations and citations omitted). Significantly, the court concluded that "[e]vidence demonstrating frustration, irritation, and possibly even anger is not sufficient to penetrate official immunity, nor is proof of ill will, unless the ill will is combined with the intent to do something wrongful or illegal." Id. at 406; see also, Tittle v. Corso, 569 S.E.2d 873 (Ga. App. 2002) (officer's threats, use of profanity, and act of slamming a motorist against his vehicle were insufficient to establish actual malice).

### 1. Official Immunity Analysis as to Vickers' Pointing of Taser

Plaintiffs have not offered any evidence from which a rational juror could conclude that Defendant Vickers acted with actual malice or actual intent to cause injury to Plaintiffs by drawing and pointing his taser. In his statement of undisputed material facts and attached affidavit, Vickers stated that when he could not find that videotape the parents had requested, the father began to criticize him. Dkt. no. 58-1, pp. 3-4; dkt no. 58-3, pp. 3-4. Defendant Vickers then asked the father, the mother, and the son to step into the hallway "to diffuse the situation." Id. Despite Defendant Vickers asking the family to leave his office on five occasions and twice asking if there was anything he could do to get them to comply with his requests, they refused to step out and "grew increasingly agitated." Id. Defendant Vickers drew his taser due to their increasing agitation and refusal to comply with his requests. Id. Again, Plaintiffs did not file anything disputing these material facts, much less pointing to record evidence contradicting Vickers' account.

Plaintiffs alleged in their Amended Complaint that Defendant Vickers "stated that he was sick of their mouths and their attitudes," stated that "he did not have to show them anything," and threatened to throw them in jail and pulled out

his handcuffs prior to pointing the taser at the father's head. Dkt. no. 31, p. 5. However, Plaintiffs have not pointed to any record evidence to support these allegations. Moreover, these facts do not establish any actual malice towards Plaintiffs or actual intent to cause them injury. Vickers' alleged actions are far less indicative of wrongful animus than those alleged in Selvy, 665 S.E.2d at 403, and Tittle, 569 S.E.2d 873. In those cases, despite the more incriminating allegations against the defendant officers than those levied by Plaintiffs, the Georgia Court of Appeals found that official immunity shielded the officers from liability. Likewise, even if Defendant Vickers' frustration and impatience with Plaintiffs caused him to express ill will towards them, his statements do not imply that his decision to pull out his taser and point it towards the father was a product of malice.

The undisputed facts establish that Plaintiffs refused to leave Defendant Vickers' office, despite his multiple requests that they do so, and that Defendant Vickers then took action to induce Plaintiffs' compliance with his requests. Accordingly, Defendant Vickers is entitled to official immunity as to Plaintiffs' state law claims arising out of his pointing a taser at the father.

### 2. Official Immunity Analysis as to Closing Door on the Mother

Vickers is also entitled to official immunity regarding Plaintiffs' claims that he closed the door on the mother. As recounted above, Plaintiffs allege that as they attempted to leave Vickers' office, Vickers "slammed and continued to close the door on Mrs. Simpson, [the mother]." Dkt. no. 31, p. 5. They allege that the impact caused her to stumble and that her son had to grab her by the waist to prevent her from falling. Id. Plaintiffs offered no record evidence in support of this allegation in response to Defendant Vickers' Motion for Summary Judgment. In his statement of undisputed material facts, Defendant Vickers explains that the mother continued to argue with him as she left the office and attempted to push the door back towards Vickers to prevent it from closing. Dkt. no. 58-1, p. 4. Vickers further avers that because the window in the door to his office was covered with a large poster, he could not see the mother as he closed the door. Id. Thus, he is unaware if the door hit her. Id. Again, Plaintiffs did not directly respond to these statements of fact.

Even assuming Defendant Vickers hit the mother with the door when he closed it, Plaintiffs have not established the level of animus necessary to overcome official immunity. Specifically, they have not shown that he operated with a true

desire to do something wrong or an actual intent to cause harm to the mother. See Peterson, 504 F.3d at 1339. Rather, the undisputed facts show that he could not even see the mother when he closed the door, much less intend to harm her. While the closing of the door occurred in the midst of a heated exchange, frustration, irritation, and possibly even anger are not sufficient to penetrate official immunity. Selvy, 665 S.E.2d at 403. Thus, Defendant Vickers is entitled to official immunity on all state law claims arising out of his closing the door on the mother.

### 3. Official Immunity Analysis as to Confrontation in Hallway

Similarly, Plaintiffs allege no facts showing that Defendant Vickers demonstrated malice or intent to injure them during their ten-second confrontation in the hallway. Plaintiffs allege that Defendant Vickers "[b]randished his [h]andcuffs to them as though he would take them into custody," while they were standing in the hall. Dkt. No. 31, p. 6. Again, Plaintiffs have offered no record evidence, and they have not disputed Vickers' stated rationale for speaking to Plaintiffs in the hallway. See Dkt. No. 58-3, p. 3. Moreover, as discussed above, Plaintiff's allegations fall far short of the animus necessary to pierce the shield of official immunity. See Selvy, 665 S.E.2d 403; Tittle v. Corso, 569 S.E.2d 873. Plaintiffs do not dispute that they simply "walked around

Defendant Vickers and exited the building" after he approached them in the hallway.  This chain of events fails to demonstrate that Defendant Vickers possessed any malice or intent to injure Plaintiffs during their confrontation.  Accordingly, Defendant Vickers is entitled to official immunity as to Plaintiffs' state law claims arising out of their confrontation in the hallway.

Put succinctly, Plaintiffs have failed to show the requisite level of malice or intent to pierce the shield of official immunity as to all of their state law claims against Defendant Vickers.  This conclusion does not mean that Defendant Vickers handled the situation in the best way possible or that he made no mistakes.  See Selvy, 665 S.E.2d at 405 ("The evidence in this case may have shown poor judgment, rude behavior, and reckless disregard for the rights and safety of others on the part of the officers, but . . . we do not find that this evidence created a jury question concerning whether the officers had actual malice toward or an actual intent to injure [plaintiff].")  That is not the inquiry under Georgia law.  The Court's "task is not to decide, with the benefit of hindsight, what [Defendant Vickers] should have done.  We are concerned only with whether [Vickers'] behavior showed a deliberate intention to commit a wrongful act."  Tittle, 569 S.E.2d 877.  Pursuant to that inquiry, the Court **GRANTS**

Defendant Vickers' Motion for Summary Judgment on all of Plaintiffs' state law claims.

CONCLUSION

For the reasons and in the manner stated above, the Court **ADOPTS IN PART AND REJECTS IN PART** the Magistrate Judge's Report and Recommendation. The Court **GRANTS** Defendant Vickers' summary judgment on all of Plaintiffs' claims. Accordingly, Plaintiffs' claims against Defendant Vickers are **DISMISSED** with prejudice. The Clerk of Court is **DIRECTED** to enter the appropriate judgment of dismissal, as to Defendant Vickers.

**SO ORDERED**, this _____ day of _____, 2016.

_____

LISA GODBEY WOOD, CHIEF JUDGE
UNITED STATES ~~DISTRICT~~ COURT
SOUTHERN DISTRICT OF GEORGIA